IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| BALBOA CAPITAL CORPORATION, | |
| --- | --- |
| v. | |
| OKOJI HOME VISITS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0898-M **LEAD CASE** |
| SHAFIE TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0900-M |
| BUTT TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0901-M |
| PATEL TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0902-M |
| JOHNSTON TRANSITIONS MHT, LLC, ET AL. | Civil Action No. 3:18-cv-0903-M |
| THI TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0904-M |
| WOLDEGIORGIS TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0907-M |
| SIDDIQUI TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0908-M |
| ORTEGA HOME VISITS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0909-M |
| LAS VEGAS TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0910-M |
| EL-SALIBI TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0916-M |
| POKU HOME VISITS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0917-M |
| OPAIGBEOGU MHT LLC, ET AL. | Civil Action No. 3:18-cv-0918-M |
| SOZI TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0919-M |
| DOCTOR NHUE HO HOME VISITS LLC ET AL | Civil Action No. 3:18-cv-0920-M |
| IMRAN TRANSITIONS MHT, LLC, ET AL. | Civil Action No. 3:18-cv-0921-M |
| WAHAB TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-1949-M |
| SAGHIR TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-1950-M |
| OSTROWSKY HOME VISITS MHT LLC, ET AL. | Civil Action No. 3:18-cv-1952-M |
| SAMUEL TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-2646-M |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Partial Summary Judgment (ECF No. 272) and

Objections to, and Motion to Strike, the Summary Judgment Affidavit of Patrick Byrne (ECF

No. 298), filed by Defendant Ascentium Capital LLC. For the reasons explained below, the

Motion for Partial Summary Judgment is **GRANTED**, and the Motion to Strike is **DENIED AS MOOT**.

## I. Background

Plaintiff Balboa Capital Corporation ("Balboa") is a finance company, and from October 2016 through February 2017, it entered into agreements with twenty separate physician-run LLCs, to finance their licenses from America's Medical Home Team, Inc. ("MHT") to establish home health care practices. MHT recruited physicians to establish such practices, and the physicians would borrow money from firms such as Balboa to pay the fees charged by MHT. Balboa alleges it agreed to finance these LLCs based on references provided to it in 2016 by Defendant Ascentium Capital LLC ("Ascentium"), which previously financed similar MHT licenses.

Balboa alleges that Ascentium's Senior Vice President, Cliff McKenzie, and its Chief Credit Officer, Hernan Traversone, made several misrepresentations to Balboa that they knew to be false. Specifically, Balboa alleges that McKenzie and Traversone represented that Ascentium's experience with MHT had been "lucrative and positive" but that the relationship was coming to an end due to an internal portfolio limit (Third Am. Compl. (ECF No. 266) ¶ 10)[1]; that Ascentium had never experienced a "hard default" with any borrowers financing MHT licenses (*id.* ¶ 15); and that Ascentium had experienced no default on "any of the more than $40 million of financing it had provided since 2012 to more than 200 physicians" (*id.* ¶ 17). Balboa alleges that Ascentium knew these statements were false when McKenzie and Traversone made them on Ascentium's behalf in August and October 2016, because in early 2016,

---

[1] Unless otherwise noted, references to the docket or ECF filings are to the lead case, *Balboa Capital Corp. v. Okoji Home Visits MHT LLC, et al.* ("Lead Case"), Case No. 3:18-cv-898 (N.D. Tex. Apr. 11, 2018).

2

"Ascentium was aware that the vast majority of its borrowers had not established a home health care practice at all, much less a profitable practice" and that to the extent monthly payments were being made, they were being made by MHT. *Id.* ¶ 19. In addition, Balboa alleges that "Ascentium had demanded in early 2016 that MHT immediately pay a number of its loans in full." *Id.*

Following its conversations with Ascentium, Balboa began funding loans to physicians through MHT. Balboa executed its first contract with a physician-run LLC on October 18, 2016, and its last on February 27, 2017. *See Balboa Capital Corp. v. Woldegiorgis Transitions MHT, LLC et al.*, No. 3:18-cv-00907, ECF No. 61-1 (N.D. Tex. Aug. 21, 2020); *Balboa Capital Corp. v. Samuel Transitions MHT LLC et al.*, No. 3:18-cv-2646, ECF No. 39-1 (N.D. Tex. Aug. 21, 2020).

The first LLCs defaulted on their loan obligations to Balboa on or about April 18, 2017. *Samuel Transitions MHT*, ECF No. 61 ¶ 37. By June 2017, all the LLCs had defaulted on their loan obligations to Balboa, and Balboa initiated collection suits against each of them, naming as defendants in each respective suit the LLC created for the physician's home health care services (the "Doctor LLC") and the physician, as the Doctor LLC's guarantor.[2] In April 2018, the cases were transferred from the Central District of California to this district, and on January 24, 2019, this Court consolidated the cases for all pretrial issues. ECF Nos. 34, 43.

On November 8, 2019, Balboa filed its Second Amended Complaint in the consolidated cases, naming Ascentium as an additional defendant, and asserting claims for fraud and negligent

---

[2] The Stipulation to Transfer Consolidated Actions to the U.S. District Court for the Northern District of Texas, filed by Balboa and Defendants before Ascentium joined the case, indicates that the separate cases were all filed in California state court "between approximately April 2017 and June 2017," and then removed to the United States District Court for the Central District of California. *See, e.g.*, ECF No. 33, at 3.

misrepresentation. *See* Second Am. Compl. (ECF No. 169) ¶¶ 46–57. Balboa made identical allegations against Ascentium in each of the consolidated cases, namely that Ascentium misrepresented the viability of MHT and Ascentium's experience with funding MHT licenses, which induced Balboa to fund similar licenses, and which eventually caused Balboa to incur injury when the Doctor LLCs defaulted.

Ascentium moved to dismiss Balboa's claim for negligent misrepresentation as time barred. ECF No. 247. In denying the motion to dismiss, the Court agreed that the negligent misrepresentation claim is time barred unless an exception applies, but declined to dismiss the claim under Rule 12(b)(6), recognizing that Balboa may be able to establish tolling of the statute of limitations under the discovery rule. ECF No. 261, at 9–10. Ascentium now moves for summary judgment on Balboa's negligent misrepresentation claim, on the grounds that the claim is time barred, and no exception applies. ECF No. 272.

## II.  Legal Background

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment movant bears the burden to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

4

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Little*, 37 F.3d at 1075. However, the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

### III. Ascentium's Partial Motion for Summary Judgment

Ascentium argues that Balboa's negligent misrepresentation claim is time barred. There is no dispute that Texas law governs the statute of limitations analysis. *See* ECF No. 273 at 2; ECF No. 294 at 8; *see also Levels v. Merlino*, 969 F. Supp. 2d 704, 721 (N.D. Tex. 2013) ("In diversity cases in which the causes of action arise under Texas law, federal courts apply Texas statutes of limitations rules, including any accompanying rules regarding tolling."). Under Texas law, the statute of limitations for negligent misrepresentation is two years. Tex. Civ. Prac. & Rem. Code § 16.003. In Texas, "a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003).

Balboa alleges that Ascentium made the pertinent misrepresentations about MHT between August and October 2016. Third Am. Compl. ¶¶ 10, 16–17. Assuming, without deciding, that Balboa's legal injury occurred when the Doctor LLCs each defaulted on their

respective loan obligations,[3] Balboa's claim for negligent misrepresentation accrued no later than June 27, 2017, when the last of the Doctor LLCs defaulted. *See Balboa Capital Corp. v. Samuel Transitions MHT LLC et al.*, No. 3:18-cv-2646, ECF No. 39 ¶ 39 (N.D. Tex. Aug. 21, 2020). Balboa filed its claims against Ascentium on November 8, 2019, and thus, unless an exception to the statute of limitations applies, Balboa's negligent misrepresentation claim was not filed within the two-year limitations period, and is therefore untimely. *See* ECF No. 169.

Balboa contends that the discovery rule applies and tolls Balboa's claim until August 15, 2019. The discovery rule may toll the statute of limitations until Balboa "knew or, exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998) (discussing application of the discovery rule to negligent misrepresentation claims). In Texas, the discovery rule is a very limited exception to limitations and is strictly construed by courts. *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). The discovery rule applies only when: (1) the nature of the injury is inherently undiscoverable and (2) the evidence of the injury is objectively verifiable. *HECI*, 982 S.W.2d at 886. An "inherently undiscoverable" injury is one that by its nature is unlikely to be discovered within the prescribed limitations period, despite the plaintiff's

---

[3] The parties appear to dispute when the legal injury occurred for purposes of the statute of limitations analysis. In its Motion, Ascentium argues that "the statute of limitations on a claim that the defendant's conduct induced the plaintiff to enter a contract begins to run when the contract is executed," and thus contends that the statute of limitations in this case began to run no later than February 27, 2017, when Balboa entered into the last of the financing agreements with the Doctor LLCs. Mot. (ECF No. 273) at 3. On the other hand, Balboa suggests it was injured by Ascentium's alleged misrepresentations when the Doctor LLCs each defaulted on their respective loan obligations, the last of which occurred on June 27, 2017. *See* Compl. ¶ 62 ("Balboa was damaged by Ascentium's misrepresentations, by funding payments for MHT Licenses that the purchasing physicians would not repay and would ultimately deny any obligation to repay."); Resp. (ECF No. 294) at 8 ("Balboa initially believed that Balboa's injury was solely due to the borrowers and guarantors defaulting on their obligations . . . ."); *Balboa Capital Corp. v. Samuel Transitions MHT LLC et al.*, No. 3:18-cv-2646, ECF No. 39 ¶ 39 (N.D. Tex. Aug. 21, 2020). However, because Balboa did not file its negligent misrepresentation claim against Ascentium within the two-year limitations period regardless of which accrual date is used, the Court need not resolve this question.

due diligence. *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996). It does not matter that a particular plaintiff did not discover his particular injury within the limitations period. *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). Whether an injury is inherently undiscoverable is a legal question and is determined on a categorical basis. *Id.* at 735.

Ascentium argues that the discovery rule is inapplicable because there is no dispute that Balboa definitively knew of the facts giving rise to its negligent misrepresentation claim as of March 2017. Specifically, Ascentium points to a March 23, 2017, email from Balboa's President Phil Silva, to Balboa's Founder and CEO Patrick E. Byrne, and its Chief Operating Officer Robert Rasmussen, with the subject line "Ascentium Capital's Timeline per Scott Postle, MHT." Ascentium App. (ECF No. 274) at 5. The email contains the following observations from Balboa's President, Mr. Silva:

> Net, Net – **Ascentium was not straight with us. There was concern, relationship, and portfolio stress before Balboa Capital was introduced to MHT in October of 2016**.
>
> . . .
>
> Timeline:
>
> 12/15 – . . . Ascentium managers visited MHT in December 2015. . . . After reviewing the individual bank statements of the LLCs, **Ascentium required MHT to allot another $2.8M to pay off/terminate other licenses** . . . .
>
> 2/16 – . . . Ascentium required MHT to sign a Vendor Agreement to include a $40M liability to assume responsibility for any additional terminations. Scott had to sign it under duress since he did not have any other lending sources. Later, they asked Scott to sign an addendum for "up to 10% liability." . . .
>
> Very Important Note: According to Scott, **there is no way the portfolio was without delinquency in the months leading up to late October when we received the glowing reference from Cliff McKenzie and Hernan Traversone**. Scott has offered to send copies of statements reflecting the delinquency of some of the doctors at that time.

Ascentium App. at 5 (emphasis added).

7

Ascentium further points to an April 14, 2017, email from MHT's CEO, Scott Postle, to Balboa's President, Mr. Silva, with the subject line "Ascentium Documents":

> I will start sending you requested information on this email and others to follow. **I know you will be successful suing Ascentium Capital and Cliff McKenzie for misrepresentation at least and possible other claims when more information is released.** I'm sorry our MHT program has taken such a significant hit, but Balboa should not have to suffer from Ascentium's mistakes.

*Id.* at 6 (emphasis added).

Based on the above-quoted emails, the Court concludes that Balboa knew of the facts giving rise to its cause of action for negligent misrepresentation against Ascentium, by at least April 14, 2017. Specifically, by this point in time Balboa was aware that McKenzie and Mr. Traversone's representations of a "lucrative and positive" experience with MHT were misleading and inaccurate, as Balboa's own President acknowledged that Ascentium "was not straight" with Balboa and concealed various problems between Ascentium and MHT, including "concern, relationship, and portfolio stress," delinquency within the portfolio, and efforts to recoup payment directly from MHT. Indeed, not only does the summary judgment evidence reflect that Balboa knew of the facts giving rise to a negligent misrepresentation claim, the evidence also reveals that Balboa may have already been contemplating bringing such a claim. At minimum, these emails triggered a duty for Balboa to investigate a potential misrepresentation claim and file suit within the limitations period. *See Town of Dish v. Atmos Energy Corp.*, 519 S.W.3d 605, 613 (Tex. 2017) ("[K]nowledge of facts that could cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action is in the law equivalent to knowledge of the cause of action for limitation purposes." (quoting *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 436 (Tex. App.—Fort Worth 1997, pet. denied)).

Accordingly, because the discovery rule only tolls the statute of limitations until Balboa knew or should have known of the facts giving rise to its claim, the Court finds that it does not apply here, and Balboa's negligent misrepresentation claim is time barred.

Balboa points to no controverting evidence, and instead argues that because it did not experience a default until after the two emails in question were sent, it had not yet suffered an injury and thus had no duty to investigate any potential misrepresentation claims. Resp. (ECF No. 294) at 6. But Balboa cannot claim ignorance of the substance of the emails simply because there had yet to be a formal default; indeed, the email from Scott Postle to Balboa's President contemplating asserting a misrepresentation claim was sent on April 14, 2017, a mere four days before the first LLC defaulted on April 18, 2017. *See* Ascentium App. at 6; *Samuel Transitions MHT*, ECF No. 61 ¶ 37. And even assuming that the claims only accrued upon the loans' default, at minimum the emails reveal that Balboa had full knowledge of the facts underlying its negligent misrepresentation claim the moment the claims accrued. Moreover, distancing itself from the substance of the emails undermines Balboa's efforts to invoke the discovery rule; application of the discovery rule requires a showing of reasonable diligence, and the Court will not find diligence where Balboa seemingly ignored two highly relevant emails detailing the facts giving rise to its claim.

In addition, Balboa argues, without any supporting authority, that this Court "must assume" that its injury was inherently undiscoverable, and that it was unable to discover the facts underlying its negligent misrepresentation claims until August 15, 2019, when Balboa took the deposition of Dr. Nhue Ho, described by Balboa as an "MHT insider[]." Resp. at 9. According to Balboa, only at this point was Balboa able to discern facts about MHT's 2016 and 2017 financial condition giving rise to its negligent misrepresentation claim.

9

Given that the undisputed summary judgment record indicates that Balboa had knowledge of the facts, including the alleged injury, giving rise to its claim for negligent misrepresentation in April 2017, the Court need not reach the question of whether Balboa's injury was inherently undiscoverable or whether it exercised diligence in investigating the facts. The Court notes, however, that because whether an injury is inherently undiscoverable is a question of law, *Wagner*, 58 S.W.3d at 735, Balboa is entitled to no assumption or presumption in its favor at summary judgment.  Moreover, Balboa does not establish that it acted with reasonable diligence; Balboa does not adequately explain what information it needed about MHT's finances beyond what it already knew based on the March and April 2017 emails, and why it waited until 2019 to depose Dr. Ho, who Balboa sued in 2017.  *See Balboa Capital Corporation v. Doctor Nhue Ho Home Visits LLC et al.*, Case No. 3:18-cv-00920, ECF No. 1 (N.D. Tex. Aug. 4, 2017) (Notice of Removal, indicating that Balboa sued Dr. Nhue Ho on June 19, 2017).

Accordingly, because Balboa did not file suit within the two-year statute of limitations, and because no exception applies, Balboa's claim for negligent misrepresentation is time barred. Therefore, the Court GRANTS summary judgment in favor of Ascentium on Balboa's negligent misrepresentation claims.

## IV.     Ascentium's Motion to Strike

Ascentium objects to, and moves to strike, the affidavit of Patrick Byrne, attached as Exhibit 1 in Balboa's Appendix in Response to Ascentium's Motion for Summary Judgment. Ascentium argues that Byrne's affidavit (1) contradicts Byrne's prior deposition testimony as a Rule 30(b)(6) witness, and (2) contains testimony outside of his personal knowledge or experience.  Balboa cites to and relies on Byrne's affidavit only in support of its argument that the discovery rule should toll the statute of limitations, because the facts giving rise to its cause

10

of action for negligent misrepresentation were undiscoverable outside of formal discovery in the context of a lawsuit, and Balboa exercised reasonable diligence in investigating the facts.

In ruling on Ascentium's Partial Motion for Summary Judgment, the Court did not reach the question of whether the facts giving rise to Balboa's claim were undiscoverable or whether Balboa exercised reasonable diligence in investigating the facts, concluding instead that the discovery rule does not apply because the undisputed summary judgment evidence establishes Balboa knew of facts giving rise to its claim for negligent misrepresentation.  Moreover, the Court has reviewed Byrne's affidavit, and finds no testimony that creates a genuine issue of material fact that would be germane to Ascentium's Partial Motion for Summary Judgment. Thus, Ascentium's Motion to Strike is DENIED AS MOOT.

### V.  Conclusion

For the foregoing reasons, Ascentium's Partial Motion for Summary Judgment is GRANTED, and Motion to Strike is DENIED AS MOOT.

**SO ORDERED**.

August 23, 2021.

_____
BARBARA M. G. LYNN
CHIEF JUDGE

11