IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| BALBOA CAPITAL CORPORATION, | |
|---|---|
| v. | |
| OKOJI HOME VISITS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0898-M **LEAD CASE** |
| SHAFIE TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0900-M |
| BUTT TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0901-M |
| PATEL TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0902-M |
| JOHNSTON TRANSITIONS MHT, LLC, ET AL. | Civil Action No. 3:18-cv-0903-M |
| THI TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0904-M |
| WOLDEGIORGIS TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0907-M |
| SIDDIQUI TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0908-M |
| ORTEGA HOME VISITS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0909-M |
| LAS VEGAS TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0910-M |
| EL-SALIBI TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0916-M |
| POKU HOME VISITS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0917-M |
| OPAIGBEOGU MHT LLC, ET AL. | Civil Action No. 3:18-cv-0918-M |
| SOZI TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0919-M |
| IMRAN TRANSITIONS MHT, LLC, ET AL. | Civil Action No. 3:18-cv-0921-M |
| WAHAB TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-1949-M |
| SAGHIR TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-1950-M |
| OSTROWSKY HOME VISITS MHT LLC, ET AL. | Civil Action No. 3:18-cv-1952-M |
| SAMUEL TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-2646-M |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff Balboa Capital Corporation's Motions for Summary Judgment filed in each of the consolidated cases. *See Balboa Capital Corp. v. Okoji Home Visits MHT LLC, et al.* ("Lead Case"), No. 3:18-cv-0898-M, ECF No. 453; *Balboa Capital Corp. v. Shafie Transitions MHT LLC, et al.*, No. 3:18-cv-0900-M, ECF No. 78; *Balboa Capital Corp. v.*

1

*Butt Transitions MHT LLC, et al.*, No. 3:18-cv-0901-M, ECF No. 77; *Balboa Capital Corp. v. Patel Transitions MHT LLC, et al.*, No. 3:18-cv-0902-M, ECF No. 79; *Balboa Capital Corp. v. Johnston Transitions MHT, LLC, et al.*, No. 3:18-cv-0903-M, ECF No. 78; *Balboa Capital Corp. v. Thi Transitions MHT LLC, et al.*, No. 3:18-cv-0904-M, ECF No. 76; *Balboa Capital Corp. v. Woldegiorgis Transitions MHT LLC, et al.*, No. 3:18-cv-0907-M, ECF No. 76; *Balboa Capital Corp. v. Siddiqui Transitions MHT LLC, et al.*, No. 3:18-cv-0908-M, ECF No. 88; *Balboa Capital Corp. v. Ortega Home Visits MHT LLC, et al.*, No. 3:18-cv-0909-M, ECF No. 73; *Balboa Capital Corp. v. Las Vegas Transitions MHT LLC, et al.*, No. 3:18-cv-0910-M, ECF No. 91; *Balboa Capital Corp. v. El-Salibi Transitions MHT LLC, et al.*, No. 3:18-cv-0916-M, ECF No. 88; *Balboa Capital Corp. v. Poku Home Visits MHT LLC, et al.*, No. 3:18-cv-0917-M, ECF No. 77; *Balboa Capital Corp. v. Opaigbeogu MHT LLC, et al.*, No. 3:18-cv-0918-M, ECF No. 76; *Balboa Capital Corp. v. Sozi Transitions MHT LLC, et al.*, No. 3:18-cv-0919-M, ECF No. 73; *Balboa Capital Corp. v. Imran Transitions MHT, LLC, et al.*, No. 3:18-cv-0921-M, ECF No. 63; *Balboa Capital Corp. v. Wahab Transitions MHT LLC, et al.*, No. 3:18-cv-1949-M, ECF No. 75; *Balboa Capital Corp. v. Saghir Transitions MHT LLC, et al.*, No. 3:18-cv-1950-M, ECF No. 72; *Balboa Capital Corp. v. Ostrowsky Home Visits MHT LLC, et al.*, No. 3:18-cv-1952-M, ECF No. 54; *Balboa Capital Corp. v. Samuel Transitions MHT LLC, et al.*, No. 3:18-cv-2646-M. ECF No. 50.[1] On March 9, 2022, the Court heard argument on the Motions. For the following reasons, the Motions are **DENIED**.

---

[1] The Court consolidated for pretrial purposes Balboa's separate suits against various physicians. Lead Case, ECF No. 43. The Court's order consolidating the cases directed the parties to make all pretrial filings in both the lead case and in the individual case to which the matter relates. Here, Balboa generally filed its Motions for Summary Judgment only in the individual cases, but this Order also addresses the Motion for Summary Judgment in *Thi*, Case No. 3:18-cv-904, that Balboa filed in the Lead Case as well. *See* Lead Case, ECF No. 450.

I. **FACTUAL BACKGROUND**

These consolidated cases arise out of America's Medical Home Team, Inc.'s ("MHT") operation of the Medical Home Team Services Program ("MHT Program"), through which physicians could remotely supervise nurse practitioners making house calls in the physicians' region. As part of a physician's participation in the MHT Program, MHT required that a limited liability company (the "Physician LLC") be created to handle the MHT Program's financing, which purportedly would be used to pay for licenses, software, and other operational costs. The Physician LLC would then obtain financing from a lender to fund the purchase of one or more licenses from MHT, with the individual physician and the physician's professional corporation, to the extent one existed, serving as guarantors.

In October 2016, Plaintiff Balboa Capital Corporation ("Balboa") became a lender for MHT, after being referred by a previous lender, Defendant Ascentium Capital, LLC ("Ascentium"). MHT employees recruited physicians directly. The physicians involved in these cases generally represent that they received some version of the following representations from MHT regarding the arrangement: (1) Balboa, working with MHT, would provide the financing for the Physician LLC to purchase the licenses; (2) the physicians would not have to repay the loans to Balboa because the loans would be paid by revenue generated from patient billing, and if not sufficient, MHT would make payments to Balboa through "deficit funding"; and (3) if the physician wanted to leave the MHT program, MHT would resell the license.

MHT forwarded completed credit applications, co-branded with both Balboa's and MHT's logos, to Balboa for processing. The amount of financing depended on the number of MHT licenses to be purchased, but MHT's CEO, Scott Postle, stated during his deposition that

MHT, and not the physician, determined the number of licenses to be financed. Lead Case, ECF No. 455, at BALBOA APP_1932–33.

After approving the physician's credit application, Balboa generated the loan documents and sent them to MHT for MHT to obtain the necessary signatures from the physicians. The loan documents generally included an MHT Installment Payment Agreement ("IPA") or Monthly Payment Agreement ("MPA"), to be executed by the Physician LLC, and a guaranty agreement, to be executed by the physician and, if applicable, the physician's professional corporation. When MHT met with physicians to execute the funding documents, MHT would take a photo of the physician's drivers license, and occasionally a photo of the physician with an iPad box as a form of verification for Balboa that the physician had received equipment covered by the MHT program. However, MHT's CEO testified that none of the doctors financed by Balboa ever received any iPads, cars, or other equipment from MHT. *Id.* at BALBOA APP_1961–63. In addition, it is undisputed that MHT never executed a license agreement with any defendant physician, and no nurse practitioners were ever hired pursuant to the MHT Program.

After Balboa received the executed loan documents, but prior to funding, a verbal verification call with the physician was allegedly performed by Janet Jonas, Account Coordinator at Balboa. Jonas testified in her deposition that she did not follow a script when making the verbal verification calls, but she generally followed prompts in a form she completed to memorialize the call. *Id.* at BALBOA APP_2354. The verification calls were not recorded, and Jonas testified that she does not specifically recall speaking with any particular physician or whether she asked physicians she spoke to each question on the form. *Id.* at BALBOA APP_2331, _2369. Jonas only generally recalled having to verify customer billing information,

4

address, payment terms, and authorization to commence the transaction, and she was never required to discuss the total amount borrowed by each doctor during the verification process, or confirm that the physicians had entered into license agreements with MHT. *Id.* at BALBOA APP_2340–41, _2347, _2352, _2367. With the exception of the verbal verification call prior to funding, the physicians had no direct contact with Balboa.

Balboa executed its first MPA or IPA with a Physician LLC on October 18, 2016, and its last on February 27, 2017. *See Woldegiorgis*, No. 3:18-cv-00907, ECF No. 61-1; *Samuel Transitions*, No. 3:18-cv-2646, ECF No. 39-1. After receiving the loan documents purportedly signed by the physicians and completing the verbal verification calls, Balboa funded each loan by sending the full loan amount to MHT. For each of the loans, MHT made the initial repayments to Balboa when due.

In April 2017, MHT terminated all license agreements, and ceased making monthly payments to Balboa. In May 2017, MHT declared bankruptcy. The first Physician LLCs defaulted on their loan obligations to Balboa on or about April 18, 2017. *Samuel Transitions*, No. 3:18-cv-2646, ECF No. 61 ¶ 37. By June 2017, all the Physician LLCs had defaulted on their loan obligations to Balboa, and Balboa initiated collection suits against each of them, naming as defendants in each respective suit the Physician LLC and the physician as guarantor. The first sixteen cases were filed in California state court in May of 2017, before being removed to the Central District of California and subsequently transferred to this Court in April 2018. The last four cases were filed in this Court. On January 24, 2019, this Court consolidated these cases for pretrial management. Lead Case, ECF No. 43.

On November 8, 2019, Balboa filed its Second Amended Complaint in the consolidated cases, naming Ascentium as an additional defendant and asserting claims for fraud and negligent

misrepresentation. *E.g.*, Lead Case, ECF No. 169 ¶¶ 46–57. Balboa made identical allegations in each of the consolidated cases, namely that MHT was an illegal Ponzi scheme, and that Ascentium misrepresented the viability of MHT and Ascentium's experience with funding MHT licenses, which induced Balboa to fund similar licenses. *E.g.*, Lead Case, ECF No. 266 ("Ascentium was actively participating in the ponzi scheme with the intent that Balboa would fund enough MHT Licenses to enable MHT to pay off Ascentium's loans."). This Court dismissed Balboa's fraud by nondisclosure claim and granted summary judgment on Balboa's negligent misrepresentation claim against Ascentium in each of the consolidated cases. Lead Case, ECF Nos. 414, 424. Balboa and Ascentium subsequently reached a settlement, and Ascentium has been dismissed from the consolidated cases. Lead Case, ECF No. 667.

Balboa moves for summary judgment in nineteen of the consolidated cases,[2] seeking to recover on its claims for breach of contract against the Physician LLC and breach of guaranty against the physician and any other guarantors.[3] On March 9, 2022, the Court heard argument on the Motions for Summary Judgment. Some defendants have objected to and moved to strike certain paragraphs of and exhibits to the declaration of Patrick Byrne submitted in support of Balboa's Motions for Summary Judgment; the Court has separately sustained those objections and granted the motions to strike. *See* Lead Case, ECF No. 699.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

---

[2] Balboa moved for summary judgment against the defendants in *Doctor Nhue Ho Home Visits* (3:18-cv-920) in November 2019. The defendants did not respond to the motion, and the Court granted it on August 17, 2020, and entered final judgment on October 15, 2020.
[3] Balboa also moved for summary judgment on its fraud claim against Ascentium, which has since been dismissed.

6

law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment movant bears the burden to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the summary judgment movant has met its burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Id.* However, the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

### III.   ANALYSIS

In each of the consolidated cases, Balboa moves for summary judgment on its breach of contract and breach of guaranty claims. It is undisputed that the contracts at issue in this case, the MPA and IPA loan agreements, and associated guaranties are governed by California law. In California, the elements of a cause of action for breach of contract are (1) the existence of a contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach and (4) resulting damages to the plaintiff. *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811,

821 (2011).  California courts treat a breach of guaranty cause of action like a breach of contract claim.  *Gerristen v. Warner Bros. Entm't, Inc*., 112 F. Supp. 3d 1011, 1035 (C.D. Cal. 2015).

As an initial matter, the Court notes that in *Balboa v. Ostrowsky Home Visits*, Case No. 3:18-cv-1952, Balboa is in the process of substituting parties following the death of the physician.  Accordingly, Balboa's Motion for Summary Judgment in that case (Case No. 3:18-cv-1952, ECF No. 54) is **DENIED WITHOUT PREJUDICE** to refiling following substitution.

For the following reasons, the Court finds that there are outstanding factual questions regarding the enforceability of the MPA and IPAs in the remaining consolidated cases, precluding summary judgment on Balboa's breach of contract claims.  At the hearing, Balboa conceded that, under California law, a guarantor's obligation is commensurate with that of the principal, and accordingly, the enforceability of the guaranties depends on the enforceability of the MPA and IPAs.  *See* Cal. Civ. Code §§ 2809–10.  Thus, the Court's conclusion that summary judgment is inappropriate for Balboa's breach of contract claims requires denial of summary judgment on Balboa's breach of guaranty claims.

### A.  Case-Specific Factual Disputes as to Contract Formation

Summary judgment is inappropriate in several cases in which there are factual disputes as to the existence of the contract Balboa seeks to enforce.  Under California law, the existence of a contract requires "[p]arties capable of contracting; [t]heir consent; [a] lawful object; and [a] sufficient cause or consideration."  Cal. Civ. Code § 1550.  Consent must be free, mutual, and communicated by each to the other.  *Id.* § 1565.  "Consent is not mutual, unless the parties all agree upon the same thing in the same sense."  *Id.* § 1580.  Consent is assessed under an objective standard.  *Pac. Corp. Grp. Holdings, LLC v. Keck*, 232 Cal. App. 4th 294, 309 (2014).

Here, Defendants point to several cases in which there are unique, case-specific facts creating a factual dispute as to the formation of the contract relevant to that particular dispute. Specifically, Dr. Feng, the physician in *Samuel Transitions*, testified during his deposition that he never signed any loan-related documents, including the credit application, IPA, or guaranty, and never participated in a verbal verification. Case No. 3:18-cv-2646, ECF No. 57, at F. App. 68, 93–96, 105. Similarly, Dr. Sozi, the physician in *Sozi Transitions*, testified during her deposition that although she recognizes her signatures on the MPA and guaranty that Balboa is relying on, she had never previously seen the documents and believes she did not sign them, and instead only provided a sample signature to a MHT representative. Case No. 3:18-cv-919, ECF No. 84, at App. 127–30. Dr. Wahab, in *Wahab Transitions*, testified that although she filled out forms relating to marketing, she never signed any financial agreements, and saw the MPA for the first time only after Balboa began asking for delinquent payments. Case No. 3:18-cv-1949, ECF No. 61-2, at App. 376, 385, 389. Accordingly, because there is a factual dispute as to whether these parties consented to the contract on which Balboa seeks to recover, Balboa's Motion for Summary Judgment is **DENIED** in *Samuel Transitions*, Case No. 3:18-cv-2646, *Sozi Transitions*, Case No. 3:18-cv-919, and *Wahab Transitions*, Case No. 3:18-cv-1949.

Dr. Johnston in *Johnston Home Transitions* argues that the MPA signed by Johnston lacked an "Initial Payment Date," which was subsequently added by Balboa without informing Dr. Johnston or obtaining his consent. Specifically, after Dr. Johnston signed the MPA, Balboa added a term specifying that the "Initial Payment Date" was October 31, 2016, the same date that the MPA is dated. *Compare* Case No. 3:18-cv-903, ECF No. 82, at BALBOA APP_2703 (the MPA signed by Dr. Johnston reflecting no Initial Payment Date), *with* Case No. 3:18-cv-903, ECF No. 68-1, at 1 (the same MPA, with the October 31, 2016, Initial Payment Date added).

Balboa argues that California law provides that if no time is specified for the performance of an act required to be performed, a reasonable time is inferred, and accordingly, the MPA is not void simply because it lacked an initial payment date when Dr. Johnston signed it.  Cal. Civ. Code § 1657.  However, under California law, material alteration of a written contract extinguishes all the executory obligations of the contract against parties who do not consent to the alteration.  Cal. Civ. Code § 1700; *Cummings v. Worktap, Inc.*, No. C 17-6246 SBA, 2018 WL 1872110, at *7 (N.D. Cal. Apr. 19, 2018).  An immaterial change is one necessary to make an instrument conform to the intention of the parties and to correct a clerical mistake in the drafting, whereas a material alteration is one that changes the legal effect of the instrument.  *Lin v. Coronado*, 232 Cal. App. 4th 696, 704 (2014).

Here, there is a factual dispute as to whether Balboa's addition of an initial payment date constituted a material alteration so as to render the MPA, as amended by Balboa, unenforceable.  Specifically, Dr. Johnston testified during his deposition that he was not aware of a specific time commitment with setting up the practice, and that he told Balboa on October 31, 2016, that he did not authorize Balboa to relinquish any money until a nurse practitioner was hired and the "licensure was opened up."  ECF No. 82-6 at BALBOA APP_2526, _2542–44.  This testimony creates a fact question as to whether Balboa's unilateral addition of an October 31, 2016, payment to the MPA was an immaterial change to make the instrument reflect the parties' intent, given that Dr. Johnston appears to have believed that funding would not occur and no repayments would be due until the practice opened.  Accordingly, Balboa's Motion for Summary Judgment in *Johnston Home Transitions*, Case No. 3:18-cv-903, is **DENIED**.

### B. Factual Disputes as to Contract's Enforceability

In addition to the case-specific factual disputes previously discussed, the Court finds that there are genuine issues of material facts common to all consolidated cases, warranting denial of all of Balboa's Motions for Summary Judgment. Defendants argue that the MPA and IPA agreements underlying Balboa's breach of contract claims are not enforceable because they lack key essential terms required under California law, namely the total loan amount and interest rate, and because there was no mutual assent for Balboa to disburse the full amount of the loan to MHT at origination. Defendants also argue that there was a failure of consideration, and that there is a fact question as to whether Defendants were fraudulently induced into the agreements by MHT as Balboa's agent, so as to justify rescission of the agreements. In addition, Defendants argue that the MPA and IPA agreements are unenforceable as part of an illegal Ponzi scheme, and that summary judgment should be denied because Balboa has unclean hands.

Here, even assuming—without deciding—that the MPA and IPA agreements are not unenforceable for lack of mutual assent, consideration, or essential terms under California law, there are fact issues as to whether the defendant physicians were fraudulently induced into signing the MPA and IPA agreements, rendering them unenforceable. "[A] contract induced by fraud renders the entire agreement voidable, permitting the aggrieved party to defend a suit on the contract by objecting to its enforcement because [it was] procured or induced by fraud." *Filet Menu, Inc. v. C.C.L. & G., Inc.*, 79 Cal. App. 4th 852, 861 (2000); *see also* Cal. Civ. Code § 1567 (consent is not freely given when obtained through fraud); *id.* § 1689 (a party may rescind a contract obtained through fraud). In California, the elements of fraud are a misrepresentation (false representation, concealment, or nondisclosure); knowledge of falsity; intent to defraud; justifiable reliance; and resulting damage. *Engalla v. Permanente Med. Grp.,*

*Inc.*, 938 P.2d 903 (Cal. 1997). The existence of fraud is a question of fact. Cal. Civ. Code § 1574.

Defendants point to misrepresentations made by MHT employees when recruiting physicians into the MHT Program as the basis for their fraudulent inducement arguments, arguing that the misrepresentations were known to be false when made, with intent to defraud, and that the physicians justifiably relied on the statements. Specifically, Defendants point to the deposition testimony of Scott Postle, MHT's CEO, describing how MHT's sales team was instructed to tell physicians that "doctors would not have to make a payment" and "that there has not been a doctor that has had to come out of pocket on our [MHT] program." Lead Case, ECF No. 468, at APP 103–04. Postle further testified that MHT employees were specifically told to emphasize the resale/novation policy of reselling MHT licenses as a key selling point, and to tell physicians that "there is no interest" on the loans because "it's an installment payment. It's like renting a car by the day." *Id.* at APP 102–04, 107. Defendants also point to declarations submitted by the physicians, describing how but for MHT's statements regarding the physician's lack of financial liability, the physicians would never have agreed to contract. *E.g.*, *id.* at APP 005. Finally, Defendants argue that MHT was acting as Balboa's agent when it engaged in fraud, such that the fraudulent conduct of MHT can be imputed to Balboa. Cal. Civ. Code § 2338 ("[A] principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including **wrongful acts committed** by such agent in and as a part of the transaction of such business . . . ." (emphasis added)). In reply, Balboa does not dispute Defendants' evidence that MHT engaged in fraudulent behavior, but instead contends summary judgment is still appropriate on the grounds that MHT was not Balboa's ostensible agent because the physicians never believed MHT was Balboa's agent, pointing to deposition

testimony of the physicians describing how they did not deal with Balboa or know of Balboa's involvement. *See* Lead Case, ECF No. 556, at 19 n.1.

California recognizes both actual agency and ostensible agency. Actual agency exists when the agent is employed by the principal, whereas ostensible agency exists "when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civ. Code §§ 2299, 2300. Liability under a theory of ostensible agency is based on the doctrine of estoppel, and requires representations made by the principal, justifiable reliance by a third party, and a change of position from such reliance resulting in injury. *J.L. v. Children's Inst., Inc*., 177 Cal. App. 4th 388, 404 (2009) "Ostensible agency cannot be established by the representations or conduct of the purported agent; the statements or acts of the principal must be such as to cause the belief the agency exists." *Id.* Whether an agency relationship exists is normally a question of fact, but can be decided as a matter of law "when the facts can be viewed in only one way." *Metro. Life Ins. Co. v. State Bd. of Equalization*, 652 P.2d 426, 431 (Cal. 1982); *see also C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc*., 213 F.3d 474, 480 (9th Cir. 2000) ("[U]nless only one conclusion may be drawn, existence of an agency and the extent of an agent's authority is a question of fact and should not be decided on summary judgment.").

Defendants argue that MHT was both Balboa's actual and ostensible agent. Regarding actual agency, Defendants point to a term sheet between Balboa and MHT, indicating that for each license funded, Balboa owed a fee of $8,588,[4] payable to either MHT or another entity

---

[4] The summary judgment record contains two term sheets, one in Balboa's appendix dated June 14, 2016, reflecting "fee income of $8,588, payable to MHT Financial Services LLC or America's MHT, Inc." (Lead Case, ECF No. 455, at BALBOA APP_2698), and a second dated August 15, 2016, reflecting "fee income of $13,544, payable to MHT Financial Services LLC or America's MHT, Inc." (*Wahab Transitions*, ECF No. 61-2, at APP 452–57). However, as discussed, the parties appear to dispute only the recipient of the fee, and not the amount of the fee paid by Balboa.

13

named MHT Financial Services LLC. *See* Lead Case, ECF No. 455 at BALBOA APP_2698. The parties dispute whether the fee was paid to MHT or to MHT Financial Services, a company operated by Ascentium's Senior Vice President, Cliff McKenzie. Defendants point to ACH Request Forms and emails reflecting the fees being remitted to MHT directly. *E.g.*, *id.* at BALBOA APP_2711–13, _2715 (reflecting ACH from Balboa to MHT of $34,352, reflecting $8,558 paid for four licenses funded by Balboa on behalf of Okoji Home Visits).[5] Balboa points to deposition testimony that MHT sent fees it received from Balboa to McKenzie. *E.g.*, *id.* at BALBOA APP_754–55 (testimony of Patrick Ontal, Balboa's VP of Sales, agreeing it "would be within the realm of possibility" for Balboa to pay the $8,588 fee to MHT Financial Services, which would then pay McKenzie), _1638–39 (McKenzie's testimony that MHT did not retain fee income from Balboa, and that it flowed to McKenzie "[u]p until the end of December"), _1955–56 (Postle's testimony that the $8,588 fees paid to MHT by Balboa "were attributed to Cliff McKenzie").

The record thus contains evidence indicating that Balboa paid MHT directly for each license purchase that Balboa financed, supporting a finding of actual agency. The deposition testimony relied on by Balboa does not warrant deciding agency as a matter of law, as the testimony is not definitive; Balboa funded MHT licenses through at least February 2017 of the relevant period, but McKenzie testified that he received the fee income only through "the end of December," suggesting that at some point McKenzie stopped receiving it. In addition, Balboa provides no grounds for concluding that a separate arrangement for MHT to remit fee income to McKenzie negates an actual agency relationship between Balboa and MHT.

---

[5] The record contains similar ACH Request forms and emails for each Physician LLC in the appendices Balboa filed in support of its Motions for Summary Judgment in each respective case.

In addition, the Court finds that there is a fact issue as to whether MHT was Balboa's ostensible agent. The Ninth Circuit has recognized that, under California law, the principal's consent to establish ostensible agency need not be express, and the principal does not need to make explicit representations regarding the agent's authority to the third party. *C.A.R.*, 213 F.3d at 480. Instead, ostensible agency may be proven through: evidence of the principal transacting business solely through the agent; the principal knowing that the agent held himself out as clothed with certain authority, but remaining silent; the principal's representations to the public in general; and the customs and usages of the particular business in question. *Id.* Here, there is evidence that Balboa delegated authority to MHT to facilitate completion of the credit applications and loan agreements, and there is circumstantial evidence, such as the co-branded credit application, indicating that Balboa represented to the public that MHT had authority to operate on its behalf. *See id.* (ostensible authority can be shown through circumstantial evidence).

Accordingly, the Court concludes that there is a question of fact as to whether MHT fraudulently induced the physicians into signing the MPA and IPA agreements, and whether MHT was Balboa's actual or ostensible agent when facilitating execution of the loan agreements with Balboa, such that MHT's wrongful acts can be imputed to Balboa and render the contracts unenforceable. In light of these factual disputes, Balboa's Motions for Summary Judgment are **DENIED**.

## IV.   CONCLUSION

For the foregoing reasons, Balboa's Motion for Summary Judgment in *Ostrowsky*, Case No. 3:18-cv-1952, is **DENIED** without prejudice to refiling, and the rest of Balboa's Motions for Summary Judgment are **DENIED**.

**SO ORDERED**.

March 25, 2022.

_____
BARBARA M. G. LYNN
CHIEF JUDGE