**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| BALBOA CAPITAL CORPORATION,<br><br>v. | |
| OKOJI HOME VISITS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0898-M<br>**LEAD CASE** |
| SHAFIE TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0900-M |
| BUTT TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0901-M |
| PATEL TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0902-M |
| THI TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0904-M |
| WOLDEGIORGIS TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0907-M |
| SIDDIQUI TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0908-M |
| ORTEGA HOME VISITS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0909-M |
| LAS VEGAS TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0910-M |
| EL-SALIBI TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0916-M |
| POKU HOME VISITS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0917-M |
| OPAIGBEOGU MHT LLC, ET AL. | Civil Action No. 3:18-cv-0918-M |
| SOZI TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-0919-M |
| IMRAN TRANSITIONS MHT, LLC, ET AL. | Civil Action No. 3:18-cv-0921-M |
| WAHAB TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-1949-M |
| SAGHIR TRANSITIONS MHT LLC, ET AL. | Civil Action No. 3:18-cv-1950-M |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court are the Motions for Attorneys' Fees, filed by the FBFK Defendants.[1]

*See Balboa Capital Corp. v. Okoji Home Visits MHT LLC, et al.* ("Lead Case"), ECF Nos. 709,

711, 713, 715, 717.  In addition, also pending before the Court are the Motions for Attorney Fees

(Lead Case, ECF Nos. 719, 722, 723, 726, 729, 734, 737, 740, 743, 745, 747) and Motions for an

---

[1] The "FBFK Defendants" refers to the Defendants in *Siddiqui Transitions*, Case No. 3:18-cv-908; *Las Vegas Transitions*, Case No. 3:18-cv-910; *El-Salibi Transitions*, Case No. 3:18-cv-916; *Wahab Transitions*, Case No. 3:18-cv-1949; *Saghir Transitions*, Case No. 3:18-cv-1950.

Award of Litigation Expenses (Lead Case, ECF Nos. 761–71), filed by the Hall Griffin
Defendants.[2]  Also pending before the Court are the Motions Requesting Adversary Submissions
(Lead Case, ECF Nos. 775–89) and Motion for Leave to File Sur-reply in Opposition to the
FBFK Defendants' Motion for Attorneys' Fees (Lead Case, ECF No. 822), filed by Plaintiff
Balboa Capital Corporation.  The parties filed duplicate copies of all asserted motions in each of
the member cases, which are also addressed by this Memorandum Opinion and Order.[3]

       The Motions for Attorneys' Fees and Motions for an Award of Litigation Expenses are
**GRANTED** as set forth in this Order.  The Motions for Requesting Adversary Submissions are
**DENIED** as moot.  The Motions for Leave to File Sur-reply are **GRANTED**; the proposed sur-
replies, attached as exhibits to the Motions for Leave, are deemed accepted by the Court, and do
not have to be refiled on the docket.

## I.   BACKGROUND

       These consolidated cases arise out of the operation of the Medical Home Team Services
Program, through which physicians could remotely supervise nurse practitioners, by America's

---

[2] The "Hall Griffin" Defendants refers to the Defendants in *Okoji Home Visits MHT LLC*, Case No. 3:18-cv-898; *Shafie Transitions*, Case No. 3:18-cv-900; *Butt Transitions*, Case No. 3:18-cv-901; *Patel Transitions*, Case No. 3:18-cv-902; *Thi Transitions*, Case No. 3:18-cv-904; *Woldegiorgis Transitions*, Case No. 3:18-cv-907; *Ortega Home Visits*, Case No. 3:18-cv-909; *Poku Home Visits*, Case No. 3:18-cv-917; *Opaigbeogu*, Case No. 3:18-cv-918; *Sozi Transitions*, Case No. 3:18-cv-919; *Imran Transitions*, Case No. 3:18-cv-921.

[3] Specifically, *Balboa Capital Corp. v. Shafie Transitions MHT LLC, et al.*, No. 3:18-cv-0900-M, ECF No. 106, 110, 111; *Balboa Capital Corp. v. Butt Transitions MHT LLC, et al.*, No. 3:18-cv-0901-M, ECF No. 107, 111, 112; *Balboa Capital Corp. v. Patel Transitions MHT LLC, et al.*, No. 3:18-cv-0902-M, ECF No. 109, 113, 114; *Balboa Capital Corp. v. Thi Transitions MHT LLC, et al.*, No. 3:18-cv-0904-M, ECF No. 104, 108, 109; *Balboa Capital Corp. v. Woldegiorgis Transitions MHT LLC, et al.*, No. 3:18-cv-0907-M, ECF No. 106, 110, 111; *Balboa Capital Corp. v. Siddiqui Transitions MHT LLC, et al.*, No. 3:18-cv-0908-M, ECF No. 110, 114, 126; *Balboa Capital Corp. v. Ortega Home Visits MHT LLC, et al.*, No. 3:18-cv-0909-M, ECF No. 103, 107, 108; *Balboa Capital Corp. v. Las Vegas Transitions MHT LLC, et al.*, No. 3:18-cv-0910-M, ECF No. 114, 118, 130; *Balboa Capital Corp. v. El-Salibi Transitions MHT LLC, et al.*, No. 3:18-cv-0916-M, ECF No. 109, 113, 125; *Balboa Capital Corp. v. Poku Home Visits MHT LLC, et al.*, No. 3:18-cv-0917-M, ECF No. 107, 111, 112; *Balboa Capital Corp. v. Opaigbeogu MHT LLC, et al.*, No. 3:18-cv-0918-M, ECF No. 106, 110, 111; *Balboa Capital Corp. v. Sozi Transitions MHT LLC, et al.*, No. 3:18-cv-0919-M, ECF No. 101, 105, 106; *Balboa Capital Corp. v. Imran Transitions MHT, LLC, et al.*, No. 3:18-cv-0921-M, ECF No. 91, 96, 97; *Balboa Capital Corp. v. Wahab Transitions MHT LLC, et al.*, No. 3:18-cv-1949-M, ECF No. 96, 110, 112; *Balboa Capital Corp. v. Saghir Transitions MHT LLC, et al.*, No. 3:18-cv-1950-M, ECF No. 95, 99, 111.

Medical Home Team, Inc.'s ("MHT").  As part of a physician's participation, MHT required that a limited liability company (the "Physician LLC") be created to obtain financing from a lender to fund the purchase of one or more licenses from MHT.

In October 2016, Plaintiff Balboa Capital Corporation ("Balboa") became a lender for MHT, after being referred by a previous lender, Ascentium Capital, LLC ("Ascentium").  After approving the physician's credit application, Balboa generated loan documents, including an MHT Installment Payment Agreement ("IPA") or Monthly Payment Agreement ("MPA"), to be executed by the Physician LLC, and a guaranty agreement, to be executed by the physician and, if applicable, the physician's professional corporation.  Balboa executed MPA and IPA agreements with Physician LLCs between October 2016 and February 2017.

By June 2017, all the Physician LLCs had defaulted on their loan obligations to Balboa, and Balboa initiated collection suits against each of them, naming as defendants in each respective suit the Physician LLC and the physician as guarantor.  The first sixteen cases were filed in California state court in May of 2017, before being removed to the Central District of California and then transferred to this Court in April 2018.  The last four cases were filed in this Court.  On January 24, 2019, this Court consolidated these cases for pretrial management.  ECF No. 43.

This memorandum opinion and order concerns sixteen of the consolidated cases, which fall into two groups based on defense counsel.  In eleven of the cases, the physician guarantors are represented by Hall Griffin LLP (the "Hall Griffin Defendants").  In the remaining five cases relevant to this opinion, the Physician LLCs and guarantors are represented by Ferguson Braswell Fraser & Kubasta PC (the "FBFK Defendants").  The Court will occasionally refer to the Hall Griffin and FBFK Defendants collectively as "Movants."

At summary judgment, the Court concluded that both the Hall Griffin and FBFK Defendants were entitled to summary judgment on Balboa's breach of contract and breach of guaranty claims, on the grounds that no enforceable contract existed between Balboa and any of the Physician LLCs.  ECF Nos. 702, 706.  The Court then entered Judgment in each of the sixteen cases that Balboa take nothing on its claims.  The Hall Griffin and FBFK Defendants have now moved for attorneys' fees and costs.

## II.   LEGAL STANDARD

Under the "American Rule," "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Peter v. Nantkwest, Inc*., __ U.S. __, 140 S. Ct. 365, 370 (2019) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010)).  California Civil Code § 1717(a) authorizes the award of attorneys' fees to the prevailing party "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs."  Cal. Civ. Code § 1717(a).  Reasonable attorney's fees incurred to enforce that contract "shall be fixed by the [C]ourt, and shall be an element of the costs of suit." *Id*.  When § 1717(a) applies, the award of fees is mandatory.  *See Common Cause v. Board of Supervisors*, 49 Cal.3d 432, 443 (1989).

The "prevailing party" is "the party who recovered a greater relief in the action on the contract."  Cal. Civ. Code § 1717(b)(1).  California court have construed § 1717 liberally.  *See, e.g.*, *Reyes v. Beneficial State Bank*, 76 Cal. App. 5th 596, 617 (2022)  It is settled that a party is entitled to attorneys' fees under § 1717 "even when the party prevails on grounds the contract is inapplicable, invalid, unenforceable or nonexistent, if the other party would have been entitled to attorney[ ] fees had it prevailed.'"  *Id.* (quoting *Hsu v. Abbara*, 9 Cal.4th 863, 870 (1995)) (internal quotation marks omitted).

4

"The amount of an attorney fee to be awarded is a matter within the sound discretion of the trial court." *In re Tobacco Cases I*, 216 Cal. App. 4th 570, 587 (2013). In California, the fee ordinarily begins with the "lodestar," *i.e.*, "the number of hours reasonably expended multiplied by the reasonable hourly rate." *Ctr. for Bio. Diversity v. Cnty. of San Bernardino*, 188 Cal. App. 4th 603, 616 (2010).

The lodestar calculation begins with a determination of the reasonable hourly rate, *i.e.*, "the rate prevailing in the community for similar work." *Marshall v. Webster*, 54 Cal. App. 5th 275, 285 (2020). Generally, the relevant community is that where the court is located. *Id*. In determining whether an hourly rate is reasonable, "the court may rely on its own knowledge and familiarity with the legal market, as well as the experience, skill, and reputation of the attorney requesting fees, the difficulty or complexity of the litigation to which that skill was applied, and affidavits from other attorneys regarding prevailing fees in the community and rate determinations in other cases." *569 E. Cnty. Boulevard LLC v. Backcountry Against the Dump, Inc.*, 6 Cal. App. 5th 426, 437 (2016) (citations omitted). The court "may also consider whether the amount requested is based upon unnecessary or duplicative work." *Frym v. 601 Main St. LLC*, 82 Cal. App. 5th 613, 621 (2022) (citation and internal quotation marks omitted).

Once calculated, the lodestar may be adjusted based on factors including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). "[T]here is no hard-and-fast rule limiting the factors that may justify an exercise of judicial discretion to increase or decrease a lodestar calculation." *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 834 (2001).

5

In addition, the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 69–70 (9th Cir. 1975), adopted factors to be considered in evaluating the reasonableness of attorneys' fees that had been previously articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974).  Those factors are (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  *Kerr*, 526 F.3d at 70.

## III.    ANALYSIS

Movants seek both attorneys' fees and costs.

### a.  Requests for Attorneys' Fees

Movants seek attorneys' fees on the grounds that they qualify as prevailing parties under California Civil Code § 1717(b)(1).  Specifically, the Hall Griffin Defendants request a total of $705,809.66 in fees—to be distributed pro rata among the eleven cases handled by Hall Griffin—along with $36,625.00 in fees for the preparation of the motion for attorneys' fees, adjusted upwards by a multiplier of 1.7 to 2.0 to reflect the alleged fair market value for this particular action.  The FBFK Defendants request a total of $652,863.80 in fees—to be distributed pro rata among the five cases handled by FBFK—and $13,500.00 in fees for the preparation of the motions for fees, adjusted upwards by a multiplier of 1.7.  In response, Balboa does not dispute that Defendants are entitled to fees, but contests the amount of the fees requested on the

6

grounds that Defendants' proposed lodestar calculations are unreasonable and a lodestar multiplier is not justified in this case.

The Hall Griffin Defendants have submitted evidence in support of their fee request, including invoices, billing records, and the declaration of their attorney, George Hampton, of Hall Griffin LLP, and previously HamptonHolley LLP. *See* Lead Case, ECF No. 749 ("HG App."). From June 2017 through December 2018, Mr. Hampton represented the Hall Griffin Defendants while at HamptonHolley LLP. *Id.* at App. 5. Hall Griffin LLP began its representation of the Hall Griffin Defendants in January 2019, when Mr. Hampton changed firms. *Id.* at App. 5. According to Mr. Hampton, both HamptonHolley and Hall Griffin worked on the case for all eleven Hall Griffin Defendants simultaneously, and then apportioned their invoices amongst them by percentage. *Id.* at App. 6.

The evidence presented indicates that two partners and three others who were of counsel at the firm of HamptonHolley spent 112.4 hours representing the Hall Griffin Defendants in this case, and these attorneys billed their time at hourly rates ranging from $350 to $550 per hour; in addition, one legal assistant billed 11.6 hours at a rate of $210 per hour, and one paralegal billed 5.8 hours at a rate of $150 per hour. *Id.* at App. 11. Based on these rates and hours worked, the lodestar for work performed by HamptonHolley is $53,728.60. *Id.* at App. 13.

From January 2019 through December 2022, three partners, two of counsel, five associates, and one law clerk from Hall Griffin spent 1,592.3 hours representing the Hall Griffin Defendants, and billed their time at hourly rates ranging from $210 to $550 per hour. *Id.* at App. 11–12. During the same period, three paralegals billed 165.1 hours at rates ranging from $150 to $210 per hour. *Id.* at App. 12. In addition, Mr. Hampton states in his declaration that two attorneys from Hall Griffin have billed 79 hours, at rates ranging from $300 to $550 per hour, to

7

prepare the motions for attorneys' fees on behalf of the Hall Griffin Defendants, and that they anticipate spending an additional 26 hours at the same rates to prepare replies to the fees request. *Id.* at App. 13–14.  Based on these rates and hours, the lodestar for all work performed and to be performed by Hall Griffin on behalf of the eleven Hall Griffin Defendants is calculated to be $688,706.06.[4]  In total—including all fees incurred by HamptonHolley, Hall Griffin, and for preparation of the motion for fees—the Hall Griffin Defendants calculate the lodestar based on hours billed to be $742,434.66.

In support of their request for fees, the FBFK Defendants provide the declaration of their attorney, Dana Campbell, as well as excerpts from monthly bills, summaries of attorneys' fees and expenses, and summaries of invoices from Ferguson Braswell Fraser & Kubasta PC ("FBFK").  *See* Lead Case, ECF No. 741 ("FBFK App.").  According to Mr. Campbell, this evidence establishes that from May of 2017 through November of 2022, four shareholders, seven associates, three legal staff, and one law clerk billed 1,691.50 hours to the representation of the five FBFK Defendants, at rates ranging from $100 to $457.76 per hour.  *Id.* at App. 13.  In addition, Mr. Campbell estimates that he will spend thirty hours at his customary rate of $450 per hour in the preparation of the FBFK Defendants' Motion for Fees.  *Id.* at App. 15.  In total, the requested lodestar for work performed on behalf of the FBFK Defendants is $666,363.80.[5]

Balboa challenges Movants' calculation of their respective lodestars on several grounds. For support, Balboa points to a letter provided by Mr. John McDowell of Koning Rubarts LLP,

---

[4] This figure reflects $36,625 in fees related to preparing the Hall Griffin Defendants' request for fees, and $652,081.06 in all other fees incurred in defending this case.

[5] This figure reflects $652,863.80 in fees from the 1,691.5 hours billed by FBFK attorneys, and $13,500.00 in fees to be incurred in preparing the FBFK Defendants' request for fees (based on thirty hours to be billed at Mr. Campbell's typical $450 per hour rate).  FBFK App. 13.

who opines on the reasonableness and necessity of the fee applications submitted by Movants.[6] Lead Case, ECF No. 800 ("Balboa App.") at App. 165.

First, Balboa contends that the hourly rates charged by Hall Griffin and FBFK greatly exceed the typical rates that attorneys charge in collections cases, pointing specifically to Mr. Hampton's rate of $550 per hour, and Mr. Campbell's rate of $400 to $450 per hour. Balboa contends that collections matters typically command lower billing rate of $375 per hour, citing Mr. McDowell's opinion letter in support. *Id.* at App. 167.

However, the Court notes that, if one compares the total number of hours billed and the total amount of fees incurred, that effective hourly rate for both the Hall Griffin and FBFK Defendants is comparable to the $375 per hour rate requested by Balboa.[7] In addition, the cases cited by Movants confirm that the hourly rates charged by HamptonHolley, Hall Griffin, and FBFK are in line with those prevailing in the community for similar services by lawyers of reasonable comparable skill, experience, and reputation in the Dallas–Fort Worth area. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see, e.g.*, *Pharma Funding LLC v. Verde Pharmacy & Med. Supply LLC*, No. 3:20-CV-1731-N-BN, 2022 WL 4451880, at *11 (N.D. Tex. Aug. 18, 2022) (finding a rate of $350 in a breach of contract case reasonable), *report and recommendation adopted*, No. 3:20-CV-1731-N-BN, 2022 WL 4454384 (N.D. Tex. Sept. 23, 2022); *Advanced Physicians, S.C. v. Connecticut Gen. Life Ins. Co.*, No. 3:16-CV-02355-G-BT, 2021 WL 6428370, at *6 (N.D. Tex. Dec. 17, 2021) (rate of $537.00 to $862.00 per hour

---

[6] The FBFK Defendants object to the Mr. McDowell's letter as unsworn and inadmissible, and asks that the Court disregard it. ECF No. 820. Because the Court is not relying on Mr. McDowell's opinions in ruling on Defendants' applications for fees, the objections to Mr. McDowell's letter are overruled as moot.

[7] Specifically, if one considers the fees incurred prior to the preparation of the motions for attorneys' fees, the Hall Griffin Defendants were charged an effective rate of $374.06 per hour (based on $705,809.66 in fees based on 1886.9 hours billed by HamptonHolley and Hall Griffin personnel), and the FBFK Defendants were charged an effective rate of $385.97 per hour (based on $652,863.80 in fees based on 1691.5 hours billed by FBFK personnel).

appropriate).  Thus, the Court concludes that the hourly rates charged by HamptonHolley, Hall Griffin, and FBFK are reasonable.

Next, Balboa challenges the support provided by Movants in support of their lodestar calculation—namely, invoices and billing summaries—as containing numerous vague and unspecific descriptions, and as being too heavily redacted to allow meaningful review, and requests that such entries be eliminated from the lodestar.  For support, Balboa points to the letter of Mr. McDowell, who reviewed the materials in question, identified various entries that he deemed to be overly redacted, vague, for clerical work, or unrelated to this litigation, and tabulated the associated fees that Balboa now requests be excluded.  *See* Balboa App. 165–433.

The Court has reviewed the relevant invoices and billing summaries provided by Movants, including the allegedly problematic entries identified by Mr. McDowell.  Overall, the descriptions do not lack sufficient detail so as to be unable to discern the nature of the services being provided, nor are they so unintelligible as to prevent meaningful review.  There are select entries for which the descriptions are so vague or redacted that it is difficult to determine what service, exactly, was provided, or whether such efforts were duplicative or unnecessary.  *See, e.g.*, *Morris v. Hyundai Motor Am.*, 41 Cal. App. 5th 24, 38 (2019) ("Reasonable compensation does not include compensation for 'padding' in the form of inefficient or duplicative efforts . . . ." (citations omitted)).  The Court will address whether Defendants' fee requests should be adjusted in light of these entries in the context of whether it should apply a multiplier to the lodestar.

In addition, Balboa challenges certain entries as being related to clerical tasks, for which fees should not be recovered at an attorney's or paralegal's typical rate.  *E.g.*, *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 (1989) ("[P]urely clerical or secretarial tasks should not be billed at

10

a paralegal rate, regardless of who performs them."). Specifically, Balboa challenges $16,225.00 worth of time billed by four non-attorneys at FBFK, who billed their time at rates between $135 to $175 per hour. *See* Balboa App. 287–97. The Court has reviewed the challenged entries and finds that the tasks described therein are not wholly clerical or secretarial in nature, and instead, are sufficiently related to the representation of the FBFK Defendants so as to justify being billed at a paralegal rate. *E.g.*, Balboa App. 290–91 (challenged tasks include preparing an affidavit, revising an answer, assisting with deposition exhibits, and preparing an appendix).

Finally, Balboa contends that Movants seek to recover for work that was unnecessary, in that it was not reasonably related to defending Movants against Balboa's claims. Balboa challenges two categories of fees. First, Balboa points to the fact that Hall Griffin and FBFK both spent time on Balboa's fraud-based claims against Defendant Ascentium, arising out of Ascentium's recruitment of Balboa to become a lender for MHT. However, the Court notes that certain Defendants asserted a counterclaim against Balboa seeking recission of their respective guaranties based on fraud. Balboa's claims against Ascentium involved allegations relating to MHT's operation of a fraudulent pyramid scheme in recruiting doctors to sign up and take out substantial loans; thus, Balboa's claims against Ascentium are not so wholly unrelated to Movants' claims so as to render any work expended in connection with Ascentium to be unrecoverable. Indeed, while the litigation was still pending, Movants asserted that they were entitled to a credit for the amount Balboa received from Ascentium to be applied against any damages awarded against Defendants. Lead Case, ECF No. 694.

Second, Balboa contends that the FBFK Defendants are seeking to recover fees incurred by FBFK in connection with two of the consolidated cases, Case No. 3:18-cv-903, *Balboa Capital Corp. v. Johnston Transitions MHT, LLC et al.*, and Case No. 3:18-cv-1952, *Balboa*

*Capital Corp. v. Ostrowsky Home Visits MHT LLC et al.* Neither the *Johnston* case nor the

*Ostrowsky* case were included in the Court's decision granting summary judgment to the Hall

Griffin and FBFK Defendants. Instead, in the *Johnston* matter, FBFK withdrew as counsel for

Dr. Johnston in April 2020 based on nonpayment of fees. *See* Case No. 3:18-cv-903, ECF Nos.

57, 58. Similarly, FBFK moved to withdraw as counsel in *Ostrowsky* in October 2019 for failure

to communicate and pay for legal services. Case No. 3:18-cv-1952, ECF Nos. 17, 25.

Both *Johnston* and *Ostrowsky* were ultimately voluntarily dismissed by Balboa, without

reaching the merits, and thus the Defendants in neither case qualify as a "prevailing party"

entitled to fees.[8] Even if they did, FBFK withdrew from representation in both cases, and thus

lacks standing to seek fees on Dr. Johnston's and Dr. Ostrowsky's behalf. However, multiple

entries in FBFK's billing summaries reflect work done in connection with the *Johnston* and

*Ostrowsky* matters, both before and after FBFK withdrew from representation, including

preparing declarations, drafting and responding to discovery requests, drafting motions to

dismiss and to withdraw, "conferences" of unspecified significance, and correspondence

regarding the entry of default against Dr. Ostrowsky.

FBFK responds that, before June 2019, all of the Defendants represented by FBFK—

including those in *Johnston* and *Ostrowsky*—were billed collectively, and that FBFK began

billing the matters separately starting in June 2019. *See* Lead Case, ECF No. 816 at 8–9. FBFK

contends that it is not seeking any fees associated with services provided to Dr. Johnston and Dr.

Ostrowsky after June 2019. *Id.*

---

[8] Specifically, in *Johnston*, Balboa filed a Joint Motion to Dismiss with Prejudice in March 2023, following settlement, which was granted. Case No. 3:18-cv-903, ECF No. 101, 102. In *Ostrowsky*, Balboa filed a Notice of Dismissal without Prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(i) in June of 2022, after the death of Dr. Ostrowsky. Case No. 3:18-cv-1952, ECF No. 94.

FBFK's response is problematic for two reasons.  First, FBFK concedes that it is seeking to recover for work expended on behalf of the *Johnston* and *Ostrowsky* prior to June 2019, despite not being entitled to do so.  FBFK states that, as of June 2019, its fees totaled $162,031.69, and thus the pro rata share for each of the seven cases would have been $23,147.29, or $46,294.57 attributable to *Johnston* and *Ostrowsky*.[9]  Thus, the FBFK Defendants' lodestar should, at minimum, be reduced by $46,294.57 to reflect unrecoverable fees.

Second, the billing summaries submitted by in support of the FBFK Defendants' request for fees indicates that FBFK is, in fact, seeking to recover for work incurred in connection with *Johnston* and *Ostrowsky* after FBFK began billing for those clients separately in June 2019.  *See, e.g.*, FBFK App. 106, 108, 110, 115–16, 121–22, 157, 171–72, 193, 198, 219; *see also* ECF No. 822 at 6–8.  Unfortunately, many of the billing entries reflect block billing—*i.e.*, a single block of time attributed to multiple discrete tasks—and thus hamper the ability of the Court to discern the exact amount of unrecoverable fees.

The parties provide no guidance or rule of thumb as to how the Court might segregate unrecoverable fees related to *Johnston* and *Ostrowsky* from FBFK's otherwise recoverable fees. As a result, the Court must attempt to reasonably estimate how much time is unrecoverable. Balboa has identified thirty-one entries on FBFK's billing summaries that relate to Dr. Johnston or Dr. Ostrowsky and are thus unrecoverable.  If the Court assumes that each entry reflects one hour of work, billed at Balboa's requested hourly rate of $375 per hour, that results in $11,625.00 of additional unrecoverable fees incurred by FBFK beginning in June of 2019, which should be subtracted from FBFK's lodestar.  Depending on the particular activity, a given task

---

[9] FBFK appears to endorse this pro rata calculation, admitting in its reply that "assuming . . . that Drs. Ostrowsky and Johnston each paid their pro rata shares" of the pre-June 2019 bills, "those shares totaled less than $50,000.00."  ECF No. 816 at 9.

undertaken in defending a lawsuit might take a fraction of an hour, or several; in this scenario where the use of block billing precludes a more precise calculation of unrecoverable time, the Court finds that one hour per listed task is a reasonable proxy for actual amount of time expended. In addition, Balboa's requested hourly rate of $375 per hour is less than the effective hourly rate charged on behalf of all FBFK professionals. *See supra* note 7 (noting that the FBFK Defendants were charged an effective rate of $385.97 per hour, based on the total dollar amount of fees divided by the total hours billed by FBFK personnel).

For the foregoing reasons, the Court determines that the lodestar for the Hall Griffin Defendants is $742,434.66, and that the lodestar for the FBFK Defendants is $608,363.80.[10] Movants request that the Court adjust each lodestar upward by a multiplier of 1.7 to 2.0 (Hall Griffin Defendants) or 1.7 (FBFK Defendants). The Court evaluates whether to adjust the lodestar under the factors set forth in *Ketchum*, 24 Cal. 4th at 1132, and *Kerr*, 526 F.3d at 70.

The Court concludes that an upward adjustment of the lodestar is not warranted. Although the Court agrees that counsel obtained a successful result for their clients, these cases presented issues of contract formation and enforceability, and thus did not present any particularly novel questions that necessitated any particular skillset or specialization to defend. None of the Movants contend that participating in this litigation precluded other employment from the attorneys involved.

In addition, Movants have not established that they were represented on a contingent basis. *See, e.g.*, FBFK App. 12 ¶ 35 (FBFK Defendants "agreed to pay non-contingent, hourly attorneys' fees"). Although the Hall Griffin Defendants characterize counsel's representation as being "on a somewhat contingent basis" (ECF No. 720 at 24), such characterization appears to

---

[10] Specifically, the FBFK Defendants' lodestar is calculated as $666,363.80 (FBFK's requested lodestar), less $46,294.57 and $11,625.00 in unrecoverable fees incurred prior to and after June 2019, respectively.

be based on a generalized assumption of each individual Defendant's ability to pay Hall Griffin's fee, as opposed to the representation being taken on a contingent basis from inception. *E.g.*, HG App. 7 ¶ 21 ("The Doctor Defendants' limited income combined with Balboa's negative credit reporting required both firms to take a credit risk in its representation . . . ."). Indeed, the evidence provided indicates that HamptonHolley and Hall Griffin have received payment from their clients for at least a majority of the services rendered, indicating that the engagement was not entered into on a contingent basis. *Id.*

Movants also point to the amount of discovery conducted—*i.e.*, thirty-three depositions and approximately 8,000 pages produced by Balboa—as being reflective of the alleged complexity and undesirability of this case. However, when one considers that the parties conducted that discovery on behalf of twenty member cases, that volume of discovery actually appears to be judicious and reasonable given the sheer number of parties involved.

Having considered the *Ketchum* and *Kerr* factors, the Court concludes that the Movants' lodestar figures should be adjusted downward to account for duplication of work and inefficiencies that are apparent to the Court. The Court consolidated these cases for pretrial purposes because of the common nature of the claims and related factual issues presented therein; although each individual doctor Defendant had a different experience in being approached by and receiving representations from MHT before signing the relevant loan documents, the legal grounds for Balboa seeking to enforce, and the Defendants' challenges to, the MPA and IPA agreements were virtually identical. Indeed, many of the issues raised in this

case *were* in fact, identical, as evidenced by the fact that throughout this case, the parties filed practically identical copies of motions in every member case and the Lead Case.[11]

This was not an efficient use of effort or time, particularly as many of the issues could have been presented and decided once. In addition, given the substantial overlap in subject matter between the Hall Griffin and FBFK Defendants, there were multiple issues that could have been coordinated between defense counsel to conserve resources and increase efficiency. For example, Movants could have coordinated preparing and filing a single joint *Daubert* motion to exclude Balboa's expert Elizabeth Ann Schrupp; instead, the FBFK Defendants and Hall Griffin Defendants each prepared highly similar, but slightly different, motions in each of the 16 member cases, which then necessitated the preparation of an equivalent number of responses and replies.

The Court raised these inefficiencies with counsel on multiple occasions. *See, e.g.*, ECF No. 461 ("The Court reminds the parties that these cases are consolidated for pretrial purposes, and encourages the parties to avoid administrative redundancies and inefficiencies whenever possible. For example, where the parties seek identical relief across the majority of the consolidated cases, a single filing in the lead case will suffice."); ECF No. 824 at 17–19. However, the duplication of motions and filings persisted, including into the instant requests for attorneys' fees currently pending before the Court; although both the Hall Griffin and FBFK

---

[11] For example, at summary judgment, Balboa submitted declarations by Patrick Byrne in its appendices supporting its Motion for Summary Judgment, and attached to its Response to each of the Hall Griffin Defendants' Motion for Summary Judgment. In each of the Hall Griffin cases, Defendants filed two nearly identical Motions to Strike Byrne, one per declaration, making almost identical arguments as to why the declaration should be struck in every case. At no point did any party provide notice to the Court that the arguments being made in each case and each motion were, in fact, identical, which resulted in the Court having to read and review every single filing individually—across the eleven cases making up the Hall Griffin Defendants—to confirm whether the arguments to strike were the same. Such inefficiencies and duplications permeated this case, including in filings made by the FBFK Defendants, and could have been substantially reduced by consolidating issues common to all cases into one filing, or designating a singular case to act as representative and then drawing the Court's attention to relevant distinctions between the cases.

Defendants each seek a single sum—to be apportioned on a pro rata basis to reflect the work performed on behalf of each individual case—individual, duplicative motions were filed on behalf of each individual case.

In addition, the vagueness of certain entries in Movants' billing records, discussed previously, undermines the Court's ability to determine the extent to which the lodestar should be reduced to account for inefficiencies and unnecessary duplications of effort.  *See Morris*, 41 Cal. App. 5th at 38.  As a result, after evaluating the billing statements, the arguments of counsel, and the *Ketchum* and *Kerr* factors, the Court determines that it is appropriate to reduce the lodestars in this case by 25%, and apply a multiplier of 0.75.

Any remaining objections to Movants' requests for reasonable attorneys' fees are denied. The Court therefore determines that for reasonable attorneys' fees, the Hall Griffin Defendants are entitled to recover $556,826.00, and the FBFK Defendants are entitled to recover $456,333.17.

### b.  Litigation Expenses

Movants seek recovery of litigation expenses pursuant to Federal Rule of Civil Procedure 54(d)(1) and California Code of Civil Procedure §§ 1032 and 1033.5.  The Hall Griffin Defendants collectively request a total of $16,882.12 in litigation expenses, consisting of $5,655.00 in first appearance fees and $11,227.12 in travel fees for depositions and court proceedings.  The FBFK Defendants collectively request $42,619.77 in litigation expenses, consisting of $20,360.47 in deposition expenses; $12,653.44 in service fees relating to document searches, postage and package services, and data storage; and $9,605.86 in travel-related expenses.  Balboa does not challenge these requested costs, and the Court finds that they are reasonable.

17

### c. Balboa's Motions for Adversary Submissions

Movants filed their respective requests for attorneys' fees on March 15, 2023. On March 23, 2023, Balboa filed its Motions Requesting Adversary Submissions under Rule 54, in which Balboa requested that the Court provide Balboa with an opportunity to respond to the requests for fees. *E.g.*, Lead Case, ECF No. 774. On April 5, 2023, Balboa filed an opposition to Movants' requests for fees.

Federal Rule of Civil Procedure 54(d)(2)(C) provides that, on a party's request, the Court must give an opportunity for adversary submissions on a claim for attorneys' fees. Here, because Balboa responded to Movants' requests for fees, the Motions Requesting Adversary Submissions are **DENIED** as moot.

## IV.   CONCLUSION

For the foregoing reasons, the Motions for Attorney Fees are **GRANTED** as follows. The Hall Griffin Defendants are collectively entitled to recover $556,826.00 in reasonable attorneys' fees, and $16,882.12 in litigation expenses. The FBFK Defendants are collectively entitled to recover $456,333.17 in reasonable attorneys' fees, and $42,619.77 in litigation expenses. All other requests for fees, costs, or expenses are **DENIED**.

**SO ORDERED**.

July 29, 2024.

BARBARA M. G. LYNN
SENIOR UNITED STATES DISTRICT JUDGE

18