IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BALBOA CAPITAL CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-898-M |
| | § | |
| OKOJI HOME VISITS MHT, LLC et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendants-Appellees Siddiqui Transitions MHT LLC, Abdul Siddiqui, M.D.,
Ltd., Abdul Siddiqui, Las Vegas Transitions MHT, LLC, Sushil Patel, El-Salibi
Transitions MHT LLC, El-Salibi Infectious Diseases Of Southern Nevada, Fadi Daoud
El-Salibi, Wahab Transitions MHT LLC, Naz Wahab M.D. P.C., Naz Wahab, Saghir
Transitions MHT LLC, Sheikh S. Saghir Professional Limited Liability Company,
Sheikh Saghir, Godswill Okoji, ULNACS Medical Care P.C., El Sherif Omar Shafie,
Zaigham But, Jaideep Patel, Vu Thi, Hailegiorgis Woldegiorgis, Scotty Ortega, Cedric
Poku-Dankwah Cedric Poku-Dankwah MD, Uchechi Opaigbeogu, Love Nakandi Sozi,
and Tabasum Imran filed a Joint Application for Appellate Attorneys' Fees in the Fifth
Circuit. *See* Dkt No. 837-8.

The Fifth Circuit denied without prejudice Defendants-Appellees' request that
it award appellate attorneys' fees and non-taxable expenses but granted their
alternative request to remand this case to this Court solely for the consideration of

such attorneys' fees and non-taxable expenses. *See* Dkt. No. 832.

Senior United States District Judge Barbara M. G. Lynn then referred Defendants-Appellees' Joint Application for Appellate Attorneys' Fees (the "Appellate Attorneys' Fees Application") to the undersigned United States Magistrate Judge for hearing, if necessary, and findings, conclusions, and recommendation under 28 U.S.C. § 636(b). *See* Dkt. No. 833.

In the Fifth Circuit, Plaintiff-Appellant Balboa Capital Corporation ("Balboa") filed an opposition, *see* Dkt. No. 837-9, and Defendants-Appellees filed a reply, *see* Dkt. No. 837-10. And, as the Parties stipulated to in their joint status report, *see* Dkt. No. 837, the parties filed supplemental briefs, *see* Dkt Nos. 840 & 841.

For the reasons explained below, the Court should grant in part the Appellate Attorneys' Fees Application [Dkt. No. 837-8].

## Background

Judge Lynn has documented the background and procedural history of these consolidated cases in prior orders. *See* Dkt. Nos. 706 & 829. The information that follows is repeated here for reference and supplemented with information relevant to the issues now presented before the Court.

These consolidated cases arise out of the operation of the Medical Home Team Services Program, through which physicians could remotely supervise nurse practitioners, by America's Medical Home Team, Inc.'s ("MHT"). As part of a physician's participation, MHT required that a limited liability company (the "Physician LLC") be created to obtain financing from a lender to fund the purchase of

one or more licenses from MHT.

In October 2016, Plaintiff Balboa became a lender for MHT, after being referred by a previous lender, Ascentium Capital, LLC ("Ascentium"). After approving the physician's credit application, Balboa generated loan documents, including an MHT Installment Payment Agreement ("IPA") or Monthly Payment Agreement ("MPA"), to be executed by the Physician LLC, and a guaranty agreement, to be executed by the physician and, if applicable, the physician's professional corporation. Balboa executed MPA and IPA agreements with Physician LLCs between October 2016 and February 2017.

By June 2017, all the Physician LLCs had defaulted on their loan obligations to Balboa, and Balboa initiated collection suits against each of them, naming as defendants in each respective suit the Physician LLC and the physician as guarantor. The first sixteen cases were filed in California state court in May of 2017, before being removed to the Central District of California and then transferred to this Court in April 2018. The last four cases were filed in this Court. On January 24, 2019, this Court consolidated these cases for pretrial management.

The sixteen consolidated cases involved two groups based on defense counsel. In eleven of the cases, the physician guarantors were represented by Hall Griffin LLP (the "Hall Griffin Defendants"). And, in the remaining five cases, the Physician LLCs and guarantors were represented by Ferguson Braswell Fraser & Kubasta PC (the "FBFK Defendants").

At summary judgment, this Court concluded that both the Hall Griffin and

FBFK Defendants were entitled to summary judgment on Balboa's breach of contract and breach of guaranty claims, on the grounds that no enforceable contract existed between Balboa and any of the Physician LLCs. *See* Dkt. Nos. 702 & 706.

Before the Court granted summary judgment in their favor, the Hall Griffin and FBFK Defendants had objected to and moved to strike certain paragraphs of and exhibits to the declaration of Patrick Byrne and Robert Rasmussen submitted in Balboa's response to the motions for summary judgment, and the Court separately sustained and granted the motions to strike. *See* Dkt. No. 699.

The Court then entered Judgment in each of the sixteen cases that Balboa take nothing on its claims. *See* Dkt. No. 708.

Balboa appealed from this Court's rulings and the parties briefed the relevant issues. *See* Dkt Nos. 837-3 to 837-6. The Hall Griffin and FBFK Defendants prepared and filed separate appellee briefs. *See* Dkt Nos. 837-4 & 837-5.

The Fifth Circuit affirmed this Court's rulings in all respects in an opinion issued on July 30, 2024. *See* Dkt. No. 837-7.

On the day before the Fifth Circuit entered its decision, this Court issued a Memorandum Opinion and Order awarding the Hall Griffin and FBFK Defendants attorneys' fees and litigation expenses from the trial stage of the litigation but determined that the requested amount should be reduced by 25 percent. *See* Dkt. No. 839.

Defendants-Appellees then filed their Appellate Attorneys' Fees Application in the Fifth Circuit. *See* Dkt. No. 837-8. And the Fifth Circuit remanded the case to this

Court for the consideration of such attorneys' fees and non-taxable expenses. *See* Dkt.

No. 832.

## Legal Standard

California law governs the undersigned's analysis of the amount and

reasonableness of the requested attorneys' fees. A fee award is governed by the same

law that serves as the rule of decision for the substantive issues in the case. *See AMS*

*Sensors USA Inc. v. Renesas Elecs. Am. Inc.*, No. 4:08-CV-00451, 2022 WL 3270007,

at *2 n.1 (E.D. Tex. Aug. 10, 2022) (quoting *Mathis v. Exxon Corp.*, 302 F.3d 448, 461

(5th Cir. 2002)).

Judge Lynn has previously explained the legal standard applied by California

courts to determine reasonable attorneys' fees:

> California Civil Code § 1717(a) authorizes the award of attorneys'
> fees to the prevailing party "[i]n any action on a contract, where the
> contract specifically provides that attorney's fees and costs." Cal. Civ.
> Code § 1717(a). Reasonable attorney's fees incurred to enforce that
> contract "shall be fixed by the [C]ourt, and shall be an element of the
> costs of suit." *Id.* When § 1717(a) applies, the award of fees is mandatory.
> *See Common Cause v. Board of Supervisors*, 49 Cal. 3d 432, 443 (1989).
>   The "prevailing party" is "the party who recovered a greater relief
> in the action on the contract." Cal. Civ. Code § 1717(b)(1). California court
> have construed § 1717 liberally. *See, e.g.*, *Reyes v. Beneficial State Bank*,
> 76 Cal. App. 5th 596, 617 (2022). It is settled that a party is entitled to
> attorneys' fees under § 1717 "even when the party prevails on grounds
> the contract is inapplicable, invalid, unenforceable or nonexistent, if the
> other party would have been entitled to attorney[ ] fees had it prevailed.'"
> *Id.* (quoting *Hsu v. Abbara*, 9 Cal.4th 863, 870 (1995)) (internal quotation
> marks omitted).
>   "The amount of an attorney fee to be awarded is a matter within
> the sound discretion of the trial court." *In re Tobacco Cases I*, 216 Cal.
> App. 4th 570, 587 (2013). In California, the fee ordinarily begins with the
> "lodestar," i.e., "the number of hours reasonably expended multiplied by
> the reasonable hourly rate." *Ctr. for Bio. Diversity v. Cnty. of San*

*Bernardino*, 188 Cal. App. 4th 603, 616 (2010).

The lodestar calculation begins with a determination of the reasonable hourly rate, i.e., "the rate prevailing in the community for similar work." *Marshall v. Webster*, 54 Cal. App. 5th 275, 285 (2020). Generally, the relevant community is that where the court is located. *Id.* In determining whether an hourly rate is reasonable, "the court may rely on its own knowledge and familiarity with the legal market, as well as the experience, skill, and reputation of the attorney requesting fees, the difficulty or complexity of the litigation to which that skill was applied, and affidavits from other attorneys regarding prevailing fees in the community and rate determinations in other cases." *569 E. Cnty. Boulevard LLC v. Backcountry Against the Dump, Inc.*, 6 Cal. App. 5th 426, 437 (2016) (citations omitted). The court "may also consider whether the amount requested is based upon unnecessary or duplicative work." *Frym v. 601 Main St. LLC*, 82 Cal. App. 5th 613, 621 (2022) (citation and internal quotation marks omitted).

Once calculated, the lodestar may be adjusted based on factors including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). "[T]here is no hard-and-fast rule limiting the factors that may justify an exercise of judicial discretion to increase or decrease a lodestar calculation." *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819, 834 (2001).

In addition, the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), adopted factors to be considered in evaluating the reasonableness of attorneys' fees that had been previously articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Those factors are (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr*, 526 F.3d at 70.

Dkt. No. 829 at 4-5.

And, under California law, "where a written contract expressly provides for the

award of attorney fees, the prevailing party in an action under or relating to the contract is entitled to recover its fees, whether incurred at trial or on appeal." *Starpoint Props., LLC v. Namvar*, 201 Cal. App. 4th 1101, 1111 (2011) (cleaned up); Cal. Civ. Code § 1717(a).

## Analysis

### I.    <u>Attorneys' Fees</u>

Defendants-Appellees seek attorneys' fees as the prevailing parties under California Civil Code § 1717.

The Hall Griffin Defendants request a total of $254,195.00 in attorneys' fees, which includes $11,910 in fees for the preparation of this motion. And the FBFK Defendants request a total of $113,985.00 in attorneys' fees, which includes $10,000 in fees for the preparation of this motion.

Balboa does not dispute that Defendants-Appellees are entitled to attorneys' fees but challenges the amount of fees requested. Balboa contends that Defendants-Appellees attorneys' fees should be significantly reduced because they performed duplicative and unnecessary work during the appeal. *See generally* Dkt. No. 837-9.

The Hall Griffin Defendants submitted evidence in support of the fees request, including invoices, a summary of their expenses, and the declaration of their attorney, George Hampton. Mr. Hampton was the counsel of record for the Hall Griffin Defendants during his time as a partner at Hall Griffin LLP from January 2019 through April 2024. *See* Dkt. No. 837-8 at 33. And he continued representing the Hall Griffin Defendants when he joined FBFK as a shareholder in April 2024. *See id*. Mr.

Hampton states that Hall Griffin worked on the case for all eleven Hall Griffin Defendants simultaneously and then apportioned their invoice by percentage. *See id.* at 36.

From April 2023 to February 2024, one partner (Mr. Hampton) and two associates (Stephanie Pittaluga and Alyson Dudkowski, who was promoted to partner in December 2023) spent 611.7 hours representing the Hall Griffin Defendants and billed their time at hourly rates ranging from $300 to $550 per hour. *See id.* at 41. Mr. Hampton adds that he and Ms. Dudkowski have spent 24.2 hours, at rates ranging from $450 to $550 per hour, to prepare this Appellate Attorneys' Fees Application. *See id.*

Based on these rates and hours, the lodestar for all work performed by Hall Griffin on behalf of the eleven Hall Griffin Defendants is calculated to be $254,195.00.

The FBFK Defendants provided excerpts from monthly billing statements that detailed the work completed, summaries of their attorneys' fees and expenses, and the declaration of their attorney, Dana Campbell.

Ms. Campbell asserts that three shareholders, including herself, Tory Cronin, and J.W. Beverly, spent 225.0 hours representing the five FBFK Defendants during the appeal and billed their time at hourly rates ranging from $450 to $625 per hour. *See id.* at 53. Ms. Campbell also estimates that she will spend thirty hours at her customary rate of $450 per hour ($13,500.00) to prepare this Appellate Attorneys' Fees Application. *See id.* at 25. But, according to Ms. Campbell's declaration and the attached attorneys' fees summary, FBFK appears to request "not less than $10,000"

for fees to be incurred. *See id.* at 25 & 53.

The Hall Griffin Defendants' counsel spent 24.2 hours (which at Ms. Campbell's rate of $450 per hour amounts to $10,890) preparing this Appellate Attorneys' Fees Application and Ms. Campbell's 225.0-hour calculation already includes 2.0 hours for "[r]eview[ing] authorities regarding recovery of appellate attorneys' fees in the Fifth Circuit" and correspondence regarding the same, *id.* at 65. And, so, the undersigned finds that the $10,000 estimate of fees to be incurred is more appropriate.

Based on FBFK's rates and hours, *see id.* at 53, the lodestar for all work performed on behalf of the FBFK Defendants is $113,895.00.

Balboa does not object to the reasonableness of the rates charged by Defendants-Appellees' counsel. Considering the effective hourly rates charged ($400 for Hall Griffin and $506 for FBFK), the experience of the attorneys who worked on this matter (ranging from fifteen to over thirty years), and the local market rates, the undersigned finds that the requested hourly rates are consistent with the prevailing market rate for the Dallas-Fort Worth legal community. *See, e.g.*, *Advanced Physicians, S.C. v. Conn. Gen. Life Ins. Co.*, No. 3:16-cv-2355-G-BT, 2021 WL 6428370, at *6 (N.D. Tex. Dec. 17, 2021) (finding a range from $537 to $862 per hour to be a reasonable rate to charge); *Tech Pharm. Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 906-07 (E.D. Tex. 2017) (finding a range from $450 to $860 per hour to be a reasonable rate to charge for attorneys).

And, so, the Court should find that Hall Griffin and FBFK's hourly rates are reasonable.

-9-

Balboa contests the respective lodestars on the grounds that Defendants-Appellees' counsel duplicated their appellate work unnecessarily by performing "identical or near-identical work on the same case with the same underlying set of facts" and filing near identical responses to its Appellant brief. Dkt. No. 837-9 at 3-4. And, so, Balboa contends that Defendants-Appellees' requested fees should be "significantly reduced." *Id.* at 3.

The undersigned now turns to whether the Court should adjust the lodestars under the *Ketchum* and *Kerr* factors enumerated above.

Defendants-Appellees do not seek an enhancement of attorneys' fees but having considered the *Ketchum* and *Kerr* factors and this Court's previous discussion of the factors as it relates to this case, the Court should find that an upward adjustment is not warranted. *See* Dkt. No. 829 at 14-15 (explaining that this case did not present any particularly novel questions nor did participating in it preclude other employment).

But, for the reasons explained below, the Court should adjust Defendants-Appellees lodestar figures downward due to their counsels' inefficiencies and unnecessary duplication of work.

> [T]he court "must carefully review attorney documentation of hours expended." *Ketchum*, 24 Cal. 4th at 1132. Prevailing counsel is entitled to compensation for all hours "reasonably spent unless special circumstances would render an award unjust." *Vo v. Las Virgenes Municipal Water Dist.*, 79 Cal. App. 4th 440, 446 (Cal. App. 2d Dist. 2000) (citing *Serrano v. Unruh*, 32 Cal. 3d 621, 639 (Cal. 1982)). Time is compensable if it was reasonably expended and is the type of work that would be billed to a client. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1933). "'Reasonably spent' means that time spent 'in the form of

-10-

inefficient or duplicative efforts is not subject to compensation.'" *Horsford v. Bd. of Trs. Of Cal. State Univ.*, 132 Cal. App. 4th 359, 394 (Cal. App. 5th Dist. 2005) (quoting *Ketchum*, 24 Cal. 4th at 1132).

*AMS Sensors USA Inc. v. Renesas Elecs. Am. Inc.*, No. 4:08-cv-00451, 2022 WL 3270007, at *7 (E.D. Tex. Aug. 10, 2022).

In considering Defendants-Appellees motion for attorneys' fees after the Court granted summary judgment in their favor, Judge Lynn scrutinized their lodestar figures and found that they should be adjusted downward "to account for duplication of work and inefficiencies that [we]re apparent to the Court." Dkt. No. 829 at 15.

Judge Lynn explained that

[t]he Court consolidated these cases for pretrial purposes because of the common nature of the claims and related factual issues presented therein; although each individual doctor Defendant had a different experience in being approached by and receiving representations from MHT before signing the relevant loan documents, the legal grounds for Balboa seeking to enforce, and the Defendants' challenges to, the MPA and IPA agreements were virtually identical. Indeed, many of the issues raised in this case were in fact, identical, as evidenced by the fact that throughout this case, the parties filed practically identical copies of motions in every member case and the Lead Case.

*Id.*

Judge Lynn found that, given the considerable overlap in subject matter between the Defendants-Appellees, this was "not an efficient use of effort or time." *Id.* at 16. And while Defendants-Appellees could have coordinated on multiple issues to conserve resources and increase efficiency, they each prepared "highly similar, but slightly different motions." *Id.*

Defendants-Appellees did not have the benefit of Judge Lynn's Memorandum

Opinion and Order (which was entered a day before the Fifth Circuit issued its opinion) while working on the appeal.

But, as Judge Lynn pointed out, the Court had already shared with counsel its concerns regarding inefficiencies on "multiple occasions." *Id.*; *see, e.g.*, Dkt. No. 461 ("The Court reminds the parties that these cases are consolidated for pretrial purposes, and encourages the parties to avoid administrative redundancies and inefficiencies whenever possible. For example, where the parties seek identical relief across the majority of the consolidated cases, a single filing in the lead case will suffice.").

The undersigned now turns to whether Defendants-Appellees' counsel persisted in such inefficiencies on appeal.

Balboa contends that the evidence of unnecessary duplication throughout the appeal is "overwhelming," as evidenced by nearly identical brief sections and side-by-side billing records. Dkt. No. 837-9 at 5-7; Dkt. No. 840 at 2.

In response, Defendants-Appellees assert that Balboa has failed to identify any inefficiencies in their efforts on appeal. *See* Dkt. No. 841 at 2-3.

Balboa's Appellant Brief, *see* Dkt. No. 837-3, raised issues concerning this Court's granting of summary judgment in Defendants-Appellees' favor, *see* Dkt. No. 706, and its ruling that struck certain paragraphs of and exhibits to the declarations of Patrick Byrne and Robert Rasmussen submitted in Balboa's response to the motions for summary judgment, *see* Dkt. No. 699.

The Court found that summary judgment was warranted because no

enforceable contract existed given that mutual assent was lacking on two grounds –
the MPA and IPA lacked essential contract terms, and the MPA and IPA did not reflect
an agreement for Balboa to make a lump sum payment of the loan amount to MHT.
*See* Dkt. No. 706 at 11.

In granting the motion to strike, the Court agreed that the objected-to
paragraphs of the declarations and associated exhibits were not relevant, not based
on the declarant's personal knowledge, and not properly authenticated and that they
constituted impermissible hearsay. *See* Dkt. No. 699 at 4. And, in doing so, the Court
explained that because "Defendants object to the Byrne and Rasmussen Declarations
on similar grounds … the Court w[ould] consider the Objections to and Motions to
Strike together." *Id.* at 3.

And, so, in responding to Balboa's Appellant Brief, Defendants-Appellees were
presented with common issues of law and fact. *See* Dkt. No. 829 at 15-16 ("Indeed,
many of the issues raised in this case *were* in fact, identical, as evidenced by the fact
that throughout this case, the parties filed practically identical copies of motions in
every member case and the Lead Case.").

Yet, the Hall Griffin and FBFK Defendants each prepared and filed appellee
briefs that, as Balboa contends, were substantially similar in form and substance.

For example, the appellee briefs offered similar reasons for why the Court
properly struck certain paragraphs of and exhibits to the respective declarations.
*Compare* Dkt. No. 837-4 at 55-66 (arguing that the Court properly sustained objections
to the Rasmussen declaration and excluded the MHT invoices because the invoices

-13-

could not qualify as business records and Rasmussen lacked personal knowledge, and, so, could not authenticate them, and that the invoices lacked relevance), *with* Dkt. No. 837-5 at 60-66 (arguing that the Byrne declaration and the MHT invoices were inadmissible hearsay because the business records exception did not apply, and were neither based on personal knowledge, properly authenticated, nor relevant).

Both appellee briefs also addressed why the Fifth Court should uphold the Court's granting of summary judgment based on its finding that no enforceable contract existed.

Specifically, the Hall Griffin and FBFK Defendants each argued that the MPAs/IPAs lacked material terms, that Balboa's incorporation-by-reference argument failed, and that the MPAs/IPAs did not contemplate an agreement for Balboa to make a lump sum payment of the loan amount to MHT. *Compare, e.g.,* Dkt. No. 837-4 at 67-68 ("Balboa simply ignores the first requirement of the three-part test for incorporation of terms of an extrinsic document, that 'the reference must be clear an unequivocal'"), *with* Dkt. No. 837-5 at 72 ("Thus, the court found reference to the incorporate document was 'clear and unequivocal,' and its terms 'easily available to the contracting parties.' These are not the circumstances in this case.").

Insofar as Defendants-Appellees contend that they avoided inefficiencies and duplication of work because their briefs cited to predominantly different authorities, and, so, are "substantially different," and by dividing oral argument by subject matter, *see* Dkt. No. 841 at 2-3, Defendants-Appellees' arguments miss the mark.

Judge Lynn's prior warnings regarding redundancies suggest that Defendants-

Appellees could have coordinated preparing and filing a single joint appellee brief (like how they filed this Joint Application for Attorneys' Fees) instead of separately developing substantively similar briefs concerning overlapping issues of law and fact.

The billing records confirm that the Hall Griffin and FBFK Defendants worked on overlapping tasks as it related to the appeal. *Compare* Dkt. No. 837-8 at 57 (discussing with co-appellee counsel merits of argument under Rule 56(c) and researching case law concerning authenticity objections), *with id.* at 358 (analyzing case law regarding Rule 56(c) and authentication by custodian of records to respond to Balboa's opening brief); *see also Morris v. Hyundai Motor Am.*, 41 Cal. App. 5th 24, 38 (2019) ("Reasonable compensation does not include compensation for 'padding' in the form of inefficient or duplicative efforts ...."; cleaned up).

And, so, after evaluating Defendants-Appellees' briefing, counsels' arguments, the billing statements, and the *Ketchum* and *Kerr* factors, the undersigned finds that it is appropriate to reduce Defendants-Appellees' respective lodestars by 25 percent and apply a multiplier of 0.75.

And the Court should determine that for reasonable attorneys' fees, the Hall Griffin Defendants are entitled to recover $190,646.25, and the FBFK Defendants are entitled to recover $85,421.25.

## II.    <u>Non-Taxable Expenses</u>

Defendants-Appellees also seek recovery of non-taxable expenses under California Code of Civil Procedure §§ 1032 and 1033.5.

The FBFK Defendants seek $1,079.70 in expenses, consisting of travel fees for

oral argument, and postage and package services. *See* Dkt. No. 837-8 at 25-26.

The Hall Griffin Defendants seek $4,653.50 in expenses, consisting of travel-related expenses, courier costs, and electronic discovery database services fees. *See id.* at 372-73.

Balboa does not challenge these requested costs.

And, so, the Court should find that they are reasonable and award Defendants-Appellees their non-taxable expenses in the amount requested.

## Conclusion

The Court should grant in part the Appellate Attorneys' Fees Application [Dkt. No. 837-8] as follows. The FBFK Defendants should recover $85,421.25 in reasonable attorneys' fees, and $1,079.70 in litigation expenses, and the Hall Griffin Defendants should recover $190,646.25 in reasonable attorneys' fees, and $4,653.50 in litigation expenses.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judges' findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by

-16-

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

     DATED: May 15, 2025

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE